UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

08 JUN 11  PM 1:01

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | | |
|---|---|---|
| ATA AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| FEDERAL EXPRESS CORPORATION, | § | **1 : 08-cv- 0785-RLY-WTL** |
| | § | |
| Defendant. | § | |

## COMPLAINT

ATA Airlines, Inc. ("ATA"), Plaintiff, files this Complaint against Federal Express Corporation ("FedEx"), Defendant, and would show the Court as follows:

I.

## INTRODUCTION

1.      Since 1983, ATA has worked with the United States Air Force's Air Mobility Command providing worldwide charter passenger services for military personnel and their families. As a member of the Civil Reserve Air Fleet, ATA was one of the largest civilian transporters of U.S. military personnel and their families to and from overseas deployments, with associated annual revenues exceeding $400 million. For many years, ATA was a member of a team, headed by FedEx as team leader, which jointly with other carriers provided charter passenger and freight services to the U.S. military. Flying for the military had been for decades a cornerstone of ATA's charter business plan and was expected to remain so in the future. This action arises from FedEx's abrupt notice of ouster of ATA from the FedEx Team in January 2008 in violation of FedEx's contractual and other promises to ATA, FedEx's duties to ATA,

and without considering the dire consequences to the needs of the United States military, our troops or to the viability of ATA.

2.    FedEx's wrongful conduct in removing ATA from the FedEx Team financially destroyed ATA and caused ATA to file bankruptcy and thereafter cease operations. FedEx's behavior is all the more outrageous because FedEx was aware long before FedEx terminated ATA that ATA had made recent and substantial multi-million dollar capital expenditures to increase the charter services it could provide to the U.S. military. Specifically, in December of 2006, ATA incurred debt in excess of $50 million which included the purchase of seven McDonnell Douglas DC-10-30 aircraft and two McDonnell Douglas DC-10-30 airframes from Northwest Airlines and associated costs in order to satisfy ATA's obligations to FedEx, the FedEx Team and our military. Shortly before ATA entered into the aircraft purchase agreement with Northwest, FedEx reconfirmed in writing that ATA would have a 50% share of the FedEx Team's military passenger service for government fiscal years 2007, 2008 and 2009. In January 2008, after ATA had committed a substantial portion of its operations and financial resources to serving the U.S. military and their families, FedEx gave notice that it was terminating ATA as a member of the FedEx Team. ATA's representatives then warned FedEx that its decision, if not reversed, would be the ruination of ATA. FedEx told ATA it was terminating ATA even if it caused ATA to fail. FedEx having refused to relent in its decision, the prophesy of ATA's demise was fulfilled in the wake of ATA filing bankruptcy on April 2, 2008. The adverse consequences of FedEx's actions resounded with the U.S. military by compromising its ability to transport its troops and military dependents. Conventional wisdom is that forewarned is forearmed, except, that is, at FedEx. As ATA foretold to FedEx, FedEx's abrupt termination of ATA from the FedEx Team and ATA's resultant demise stranded an untold number of U.S.

soldiers, sailors and Marines stuck in the Iraqi and Afghan theatres thus postponing their homecoming.   Similarly, deployment of troops to these overseas theatres and others was disrupted by the actions of FedEx.

II.

**PARTIES, JURISDICTION AND VENUE**

3.     ATA is a corporation organized and existing under the laws of the State of Indiana.  ATA's principal place of business is located in Indianapolis, Indiana.  Prior to its bankruptcy filing on April 2, 2008 and subsequent shutdown of operations on April 3, 2008, ATA employed more than 2,200 people.  Its fleet consisted of 28 operating aircraft.  ATA operated scheduled service and commercial charter service to a limited number of destinations. ATA's most profitable line of business was the operation of charter missions around the globe for the U.S. military.

4.     FedEx is a corporation organized and existing under the laws of the State of Delaware.  FedEx's principal place of business is located in Memphis, Tennessee.  FedEx may be served with process in this action by serving its registered agent in the State of Indiana, CT Corporation System, 251 E. Ohio Street, Suite 1100, Indianapolis, Indiana 46204.

5.     This Court has subject matter jurisdiction of this matter under 28 U.S.C. § 1332, as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Venue is proper under 28 U.S.C. §§ 1391(a) and 1391(c).

III.

## FACTUAL BACKGROUND

**A.    Flying for the U.S. military was a cornerstone of ATA's business.**

6.      For many years, ATA had provided military charter services through contracts issued by the U.S. Air Force's Air Mobility Command ("AMC"), a component of the U.S. Transportation Command ("USTRANSCOM") of the U.S. Department of Defense.   Before ATA's bankruptcy filing on April 2, 2008 and the decision to shut down operations on April 3rd, ATA was one of the largest transporters of U.S. military personnel and their families to and from overseas deployments.   ATA's aircraft flew to the Middle East, Asia, Europe and other regions. Its aircraft could land at both commercial and military airfields.

7.      The Defense Department contracts with commercial airlines to provide nearly all of the airlift requirements for its personnel.   Prior to its bankruptcy, ATA participated in the Civil Reserve Air Fleet ("CRAF") program through a team arrangement with other airlines.   By participating in CRAF, airlines are able to fly military charter missions, and to contract with the General Services Administration, which purchases seats on their scheduled service flights.

8.      Currently, there are two large teams, the Federal Express Team Arrangement (the "FedEx Team") and the Alliance Team Arrangement (the "Alliance Team").   In government fiscal year 2008, the FedEx Team accounted for approximately 42%, and the Alliance Team approximately 49%, of the CRAF requirements.

9.      ATA was a member of the FedEx Team, and had flown as a member of the FedEx Team for more than twenty years.   ATA and one other airline, Omni Air International, flew most of the passenger requirements of the FedEx Team.   The relationship between ATA and FedEx spanned more than twenty years, and ATA had by virtue of its longtime association, course of

dealing with FedEx and the promises from FedEx, a reasonable expectation of continuity of the FedEx relationship.

10.     In 2005, FedEx, ATA and Omni agreed that ATA and Omni would split the FedEx Team's passenger business on a 50-50 basis for fiscal years 2007, 2008 and 2009 (the "2005 Agreement"). Thereafter, the parties proceeded to perform their obligations on this basis. This agreement was memorialized in writing in September 2006, when both ATA and FedEx signed a Letter Agreement stating that FedEx would assign fifty percent (50%) of the FedEx Team's share of the passenger airlift military business for government fiscal years ending September 30, 2007, 2008 and 2009 to ATA (the "FedEx Letter Agreement"). In fiscal year 2008, the approximate value of the FedEx Team's total share of the airlift military business (passenger and cargo) was estimated to be over $1 billion. FedEx, ATA and Omni proceeded in accordance with the 2005 Agreement and the FedEx Letter Agreement for government fiscal years 2007 and 2008. ATA was included in the FedEx Team and ATA performed its obligations as a member of that team until FedEx forced ATA to cease operations. Unbeknownst to ATA, FedEx concealed from ATA that FedEx did not consider its promises and representations to be binding and that FedEx did not intend to honor them .

**B.     In December of 2006, ATA purchased Northwest Airlines' DC-10s to expand its charter fleet for the U.S. military.**

11.     Relying on FedEx's commitments to allocate half of the FedEx Team's share of AMC's passenger business award for three consecutive years to ATA, ATA pursued substantial capital investments to be in a position to fulfill its obligations. In late 2006, ATA purchased seven McDonnell Douglas DC-10-30 aircraft and two McDonnell Douglas DC-10-30 airframes from Northwest. ATA and Northwest entered into a purchase agreement for the purchase of these DC-10-30 aircraft and airframes on December 22, 2006 (the "Northwest Purchase

Agreement"). Under the Northwest Purchase Agreement, ATA agreed to pay Northwest the total sum of approximately $25 million for the DC-10-30 aircraft and airframes it purchased from Northwest. In addition, ATA incurred expenses in excess of $20 million for training of pilots and associated personnel and other expenses related to the purchase. Both FedEx and Northwest were aware that ATA intended to invest in these new wide-body aircraft to increase its capability to accept passenger business as a member of the FedEx Team. Indeed, apart from military flying, ATA had no need to purchase these wide-body DC-10 aircraft.

12.     Under an agreement with a lessor, Vx Capital Partners, ATA assigned its purchase rights in the aircraft it bought from Northwest, and ATA leased back the aircraft and other equipment. Under the Vx Capital Partners lease agreement, ATA was required to make payments aggregating approximately $38 million over approximately six years.

13.     Until it was forced out of business by FedEx, ATA performed in accordance with all its obligations with respect to government fiscal years 2007 and 2008, including the 2005 Agreement and the FedEx Letter Agreement.

**C.     FedEx knowingly killed ATA and ignored the needs of the U.S. military.**

14.     On January 22, 2008, FedEx abruptly and unexpectedly notified ATA that, despite its prior promises, representations and the performance of the parties, FedEx would no longer permit ATA to be a member of the FedEx Team for flying AMC military charters for government fiscal year 2009. The unexpected termination of ATA from participating on the FedEx Team resulted in the prospective loss of all or substantially all of ATA's AMC charter business. ATA's longstanding participation in the FedEx Team was the mainstay of its charter business and was ATA's most important profit center.

15.    When ATA inquired of FedEx as to the reasons for FedEx's termination of ATA from participating on the FedEx Team, ATA was informed that FedEx had acquiesced to Northwest's demand for the passenger business which FedEx had previously allocated to be flown by ATA for government fiscal year 2009.  As a result, FedEx advised ATA that there were insufficient remaining airlift requirements for ATA to continue as a member of the FedEx Team even though there were other non-lethal options available to FedEx.

16.    Quickly after receiving FedEx's abrupt termination notice, ATA asked FedEx more than once to relent in its decision, and warned FedEx that its subsequent decision would cause the shutdown of ATA and its operations.  FedEx indicated it understood that the termination might cause ATA to fail.

17.    The cancellation by FedEx of the critical commitment for ATA's military charter business was an unanticipated blow which crippled the future viability of ATA in the capital markets.  ATA's future operating revenues were significantly and negatively impacted by FedEx's unexpected termination of ATA's participation in the FedEx Team in violation of FedEx's promises and duties to ATA.

18.    FedEx's unjustified termination put ATA in a position where it could no longer finance its business.  As a result, ATA was compelled to seek bankruptcy protection and subsequently ceased operations.  On April 2, 2008, ATA filed for bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of Indiana.  ATA's bankruptcy proceeding pends as Case No. 08-3675 in that court.

19.    FedEx's actions in terminating ATA were made without consideration of FedEx's obligations to U.S. troops and their families.  Notwithstanding ATA's warnings to FedEx of the consequences of its impromptu termination of ATA, FedEx was unprepared to fulfill its

commitments to the U.S. military, its servicemen and their dependents. Military service personnel and their dependents were stranded, unable to either return home or to depart for their overseas assignments. The military airlift command was left to scramble to find suitable alternate transportation for U.S. military personnel and their families.

IV.

## CLAIMS FOR RELIEF

### A.   Breach of Contract

20.   ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

21.   All conditions precedent to FedEx's obligations to ATA have been performed or have occurred. The wrongful conduct of FedEx as described herein constitutes a breach and an anticipatory breach of the promises and representations made by FedEx to ATA.

22.   As a direct and proximate result of FedEx's breach of its promises, as set out in the preceding paragraphs of this Complaint, ATA has suffered financial harm and has lost the benefits expected to be received if FedEx had performed as promised. ATA's actual damages exceed $30 million in direct damages, and special or consequential damages could exceed $150 million.

### B.   Breach of Fiduciary Duty

23.   ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

24.   As of the time of its bankruptcy filing, ATA had been a member of the FedEx Team for over twenty years. As the designated representative of the FedEx Team to

USTRANSCOM and the AMC, FedEx was the sole payee of the FedEx Team and controlled the FedEx Team in its dealings with the Defense Department.

25.    Effective April 16, 2007, the members of the FedEx Team (FedEx, ATA, Northwest, Atlas Air, Inc., Omni Air International, Inc., Polar Air Cargo, Inc., and Air Transport International LLC) executed an agreement entitled "Contractor Team Arrangement Agreement" (the "2008 Team Arrangement Agreement"). Under the terms of the 2008 Team Arrangement Agreement, the parties stated their desire to contract with USTRANSCOM "as a single entity in order to satisfy military requirements" for CRAF participation. The 2008 Team Arrangement Agreement also provided that "FedEx shall be designated and authorized to represent and bind the Contractor Team Arrangement in its dealings with USTRANSCOM." 2008 Team Arrangement Agreement, ¶6 ("Control of Contractor Team Arrangement').

26.    Paragraph 7 of the 2008 Team Arrangement Agreement, entitled "Billing and Accounting Procedures," described the parties' agreements respecting billing and accounting procedures as follows:

> Each party to the Contractor Team Arrangement will bill USTRANSCOM and *USTRANSCOM will pay FedEx as the sole payee for the Contractor Team Arrangement.* The parties agree that FedEx shall establish a billing and accounting system for the Contractor Team Arrangement and implement a billing procedure satisfactory to the parties, including the payment by FedEx to the respective parties for USTRANSCOM flights operated by the Contractor Team Arrangement.

2008 Team Arrangement Agreement, ¶7 (emphasis supplied). The 2008 Team Arrangement Agreement also provided that no modification would be effective unless such modification was in writing and signed by authorized representatives of the parties thereto. 2008 Team Arrangement Agreement, ¶12(B).

27.   At some time before September 27, 2007, FedEx presented ATA with a form of agreement drafted by FedEx entitled "Contractor Team Arrangement Fee Agreement" (the "2008 Fee Agreement"). The only parties named in the 2008 Fee Agreement were FedEx and ATA.

28.   Paragraph 4 of the 2008 Fee Agreement ("Billing") expressly noted that the relationship between FedEx and ATA with respect to billings and payments under the AMC program was that of trustee and beneficiary:

> During the term of this Agreement, ATA authorized FedEx to receive the ATA Revenue from AMC and *the same shall be treated as, and is hereby declared to be, trust funds, to be held in trust by FedEx for the benefit and account of ATA* until disbursed to ATA in accordance with Section 5B.

2008 Fee Agreement, ¶4 (emphasis supplied).  In addition, paragraph 7 of the 2008 Fee Agreement stated FedEx's disclosure obligations to ATA ("FedEx shall keep ATA fully informed of all activities of, and developments in connection with, the Contractor Team Arrangement and shall provide ATA copies of all correspondence from AMC concerning the Contractor Team Arrangement.").

29.   By virtue of the foregoing, a principal/agent relationship existed between FedEx and ATA.  The relationship between the agent and principal is fiduciary in nature and generally treated with the same gravity and strictness as the trustee/beneficiary relationship.  An agent, as a fiduciary, is under a duty of loyalty to the principal.  Accordingly, in matters connected with the agency, the agent must serve only the principal, and cannot act for itself or in the interests of others.

30.   Moreover, a fiduciary relationship existed between FedEx and ATA.  As a result of the longstanding relationship between ATA and FedEx described herein, a special relationship and a relationship involving trust and confidence existed between ATA and FedEx.  Such a relationship springs from the confidence and trust reposed by one in another, who by reason of a

specific skill, knowledge, training, judgment or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. As a fiduciary, FedEx was obligated to act with loyalty to ATA, and FedEx could not favor the interests of Northwest, Omni or other FedEx Team members over those of ATA. Unfortunately, as described herein, FedEx violated its fiduciary obligations to ATA and preferred the interests of itself, Northwest and Omni over those of ATA.

31.   At all times relevant to this action, ATA performed under the AMC contract and all other pertinent agreements between FedEx and ATA. Nonetheless, FedEx abruptly terminated ATA from participating on the FedEx Team for government fiscal year 2009 in response to Northwest's demand for a larger share of the business of the FedEx Team for government fiscal year 2009. FedEx was specifically advised that its termination of ATA from the FedEx Team would cause ATA to fail. However, FedEx responded that it was nevertheless terminating ATA as a team member. FedEx stated that its primary reason for terminating ATA was its desire to transfer the business being performed by ATA to Northwest. Upon information and belief, General N. Schwartz, Commander of USTRANSCOM, upon learning of this termination of ATA by FedEx expressed concerns over FedEx's actions toward ATA.

32.   FedEx's wrongful conduct as described herein constitutes a breach of its fiduciary duties owed to ATA.

33.   As a direct and proximate result of FedEx's breach of its fiduciary duties, as set out in the preceding paragraphs of this Complaint, ATA has suffered financial harm. ATA's actual damages exceed $30 million in direct damages, and special or consequential damages could exceed $150 million.

34.     FedEx's   wrongful   conduct   was   undertaken   intentionally,   fraudulently, maliciously, or recklessly.  As a result, ATA is entitled to recover punitive damages from FedEx for breach of fiduciary duty.

**C.     Breach of Duty of Good Faith and Fair Dealing**

35.     ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

36.     The wrongful conduct of FedEx as described herein constitutes a breach of FedEx's duty of good faith and fair dealing owed to ATA as a result of the promises made by FedEx to ATA that it would allocate 50% of the FedEx Team's passenger business to ATA for government fiscal years 2007, 2008 and 2009.

37.     As a direct and proximate result of FedEx's breach of its duty of good faith and fair dealing, as set out in the preceding paragraphs of this Complaint, ATA has suffered financial harm and has lost the benefits expected to be received if FedEx had performed as promised. ATA's actual damages exceed $30 million in direct damages, and special or consequential damages could exceed $150 million.

**D.     Equitable Estoppel**

38.     ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

39.     In accordance with the promises made to ATA by FedEx as set forth above, ATA was included in the FedEx Team and ATA performed its obligations as a member of that team.

40.     In reliance upon FedEx's promises that FedEx was willing to commit for an allocation of half the FedEx Team's share of AMC's passenger business award for three consecutive years, ATA pursued substantial capital investments in order to be in a position to

fulfill its obligations to FedEx. On December 22, 2006, ATA entered into the Northwest Purchase Agreement, under which ATA agreed to pay Northwest approximately $25 million for the DC-10-30 aircraft and airframes it purchased from Northwest. ATA also incurred expenses in excess of $20 million for training of pilots and associated personnel and other expenses related to the purchase.

41.     At the time of negotiating the agreed-upon allocation levels as described above, FedEx was aware that ATA intended to invest in new aircraft to increase its capability to accept AMC passenger business as a member of the FedEx Team.

42.     ATA performed in accordance with its agreements with FedEx as described above for government fiscal years 2007 and 2008.

43.     The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive of the real facts. FedEx's conduct as described herein demonstrates that FedEx falsely represented its willingness to commit for an allocation of half the FedEx Team's share of AMC's passenger business award to ATA for government fiscal years 2007, 2008, and 2009; that FedEx had the intention or expectation that its promises described above would be and were acted on by ATA, and that FedEx had actual knowledge of the real facts, *i.e.*, its undisclosed intention to treat its promises as non-binding or otherwise dishonor its commitments to ATA and terminate ATA from the FedEx Team for government fiscal year 2009.

44.    Equitable estoppel also requires the following elements with respect to the party asserting estoppel: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.  ATA's conduct as described herein demonstrates that ATA had no knowledge of FedEx's plan to dishonor the promises described above and terminate ATA from the FedEx Team for government fiscal year 2009; that ATA relied on FedEx's representations in entering into the Northwest Purchase Agreement and incurring related costs and expenses; and that ATA changed its position prejudicially in reliance on FedEx's representations.

45.    By virtue of FedEx's conduct as set out in the preceding paragraphs of this Complaint, FedEx is equitably estopped to deny the validity or enforceability of the 2005 Agreement and the FedEx Letter Agreement.  As a direct and proximate result of FedEx's conduct as described herein, ATA has suffered financial harm.  The direct damages for which FedEx is responsible exceed $30 million.

**E.    Promissory Estoppel**

46.    ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

47.    Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.  Promissory estoppel has been said to be limited to situations where (1) the detriment suffered in reliance is substantial in an economic sense; (2) the

substantial loss to the promisee is foreseeable by the promisor; and (3) the promisee acted reasonably in justifiable reliance on the promise as made.

48.     FedEx promised to commit for an allocation to ATA of half the FedEx Team's share of AMC's passenger business award for government fiscal years 2007, 2008, and 2009. ATA reasonably and justifiably relied on FedEx's promises to its detriment by entering into the Northwest Purchase Agreement and by incurring associated costs and expenses related to the purchase. As set out in the preceding paragraphs of this Complaint, the loss suffered by ATA was substantial and foreseeable by FedEx. ATA's actual damages exceed $30 million in direct damages, and special or consequential damages could exceed $150 million.

**F.     Constructive Fraud/Fraudulent Concealment**

49.     ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

50.     Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraudfeasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

51.     As set out in the preceding paragraphs of this Complaint, a principal/agent and a fiduciary relationship existed between FedEx and ATA. The existence of these relationships creates a duty to disclose, and a breach of that duty constitutes constructive fraud or fraudulent concealment.

52.     FedEx had a duty to disclose to ATA that it did not consider the 2005 Agreement and the FedEx Letter Agreement to be binding and that it did not intend to observe its promises contained therein. At no time before January 22, 2008 did FedEx disclose to ATA its secret

position regarding the validity of the 2005 Agreement as later reconfirmed in the FedEx Letter Agreement. Instead, knowing that ATA had been justifiably acting in reliance on FedEx's promises since at least August of 2005, FedEx concealed from ATA (1) its position that the 2005 Agreement and the FedEx Letter Agreement were not binding and (2) its intention to dishonor the 2005 Agreement and the FedEx Letter Agreement and terminate ATA from the FedEx Team for government fiscal year 2009.

53.     FedEx's failure to disclose was intentional and with knowledge that it would produce a false impression in order to mislead ATA. The undisclosed representations were to existing facts which were material, and ATA reasonably relied upon FedEx's failures to disclose to its injury, as described in the preceding paragraphs of this Complaint.

54.     As a direct and proximate result of FedEx's wrongful conduct, as set out in the preceding paragraphs of this Complaint, ATA has suffered financial harm. ATA's actual damages exceed $30 million in direct damages, and special or consequential damages could exceed $150 million.

55.     The wrongful conduct of FedEx was undertaken intentionally, fraudulently, maliciously, or recklessly. As a result, ATA is entitled to recover punitive damages from FedEx for constructive fraud/fraud by concealment.

**G.     Attorney's Fees**

56.     ATA realleges and incorporates herein by reference each of the factual allegations above as though fully set forth.

57.     As a direct and proximate result of the wrongful conduct of FedEx as described herein, ATA has had to retain the services of the undersigned attorneys to defend and enforce its rights, including its rights under the 2005 Agreement and the FedEx Letter Agreement.

Accordingly, ATA is entitled to recover its reasonable attorney's fees incurred in the prosecution of this action, together with conditional awards in the event of appeal, in an amount to be determined by the Court.

## V.

### JURY TRIAL DEMANDED

58.    ATA hereby demands a trial by jury of all matters for which a trial by jury is permitted.

## VI.

### PRAYER

WHEREFORE, Plaintiff ATA requests that Defendant FedEx be cited to appear and answer, and that on final trial, Plaintiff have:

1.    Judgment against Defendant FedEx for general and special or consequential damages for breach of the 2005 Agreement and the FedEx Letter Agreement.

2.    Judgment against Defendant FedEx for direct and special or consequential damages for breach of its duty of good faith and fair dealing under the 2005 Agreement and the FedEx Letter Agreement.

3.    Judgment against Defendant FedEx for direct, special or consequential, restitutional and punitive damages for breach of fiduciary duty.

4.    Judgment against Defendant FedEx for direct and special or consequential damages in connection with ATA's claims for equitable estoppel and promissory estoppel.

5.    Judgment against Defendant FedEx for direct, special or consequential and punitive damages for constructive fraud/fraud by concealment.

6.    Prejudgment and post judgment interest as provided by law.

7.    Attorney's fees as provided by law.

8.    Costs of suit.

9.    All such other and further relief to which Plaintiff ATA may be justly entitled.

Dated:  June ___, 2008.

Respectfully submitted,

John David Hoover, Attorney No. 7945-49
Alice M. Morical, Attorney No. 18418-49
HOOVER HULL LLP
111 Monument Circle, Suite 4400
Indianapolis, Indiana  46244-0989
Telephone:  317-822-4400
Telecopier:  317-822-0234

**ATTORNEYS-IN-CHARGE FOR
PLAINTIFF ATA AIRLINES, INC.**

OF COUNSEL:

Thomas E. Kurth
Texas Bar No. 11768500
Kenneth E. Broughton
Texas Bar No. 03087250
W. Alan Wright
Texas Bar No. 22062700
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas  75202
Telephone:  214-651-5000
Telecopier:  214-651-5940

7.     Attorney's fees as provided by law.

8.     Costs of suit.

9.     All such other and further relief to which Plaintiff ATA may be justly entitled.

Dated: June ___, 2008.

Respectfully submitted,

John David Hoover, Attorney No. 7945-49
Alice M. Morical, Attorney No. 18418-49
Don R. Hostetler, Attorney No. 24239-49
HOOVER HULL LLP
111 Monument Circle, Suite 4400
Indianapolis, Indiana 46244-0989
Telephone: 317-822-4400
Telecopier: 317-822-0234

**ATTORNEYS-IN-CHARGE FOR
PLAINTIFF ATA AIRLINES, INC.**

OF COUNSEL:

Thomas E. Kurth
Texas Bar No. 11768500
Kenneth E. Broughton
Texas Bar No. 03087250
W. Alan Wright
Texas Bar No. 22062700
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202
Telephone: 214-651-5000
Telecopier: 214-651-5940