UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ATA AIRLINES, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-0785-RLY-DML |
| | ) | |
| FEDERAL EXPRESS CORP., | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS**

Defendant, Federal Express Corp. ("FedEx"), moves for judgment on the

pleadings on Counts B-G of Plaintiff, ATA Airlines, Inc.'s ("ATA"), Complaint.  For the

reasons set forth below, the court **GRANTS** the motion.

**I.      Background**

The United States Department of Defense contracts with commercial airlines to

provide nearly all of the airlift requirements for its personnel through the Civil Reserve

Air Fleet ("CRAF") program.  (Complaint ¶ 7).  Through the commercial airlines'

participation in the CRAF program, the airlines are able to fly military charter missions,

and to contract with the General Services Administration, which purchases seats on their

scheduled service flights.  (*Id.* ¶ 7).

At the time of the filing of ATA's Complaint, the CRAF program consisted of two

large teams, the Federal Express Team Arrangement (the "FedEx Team") and the

1

Alliance Team Arrangement (the "Alliance Team").  (*Id*. ¶ 8).  ATA was a member of the FedEx Team, and had flown as a member of the team for over twenty years.  (*Id*. ¶ 9).  ATA and one other airline, Omni Air International ("Omni"), flew most of the passenger requirements for the FedEx Team.  (*Id*. ¶ 9).

In 2005, FedEx, ATA, and Omni agreed to split the FedEx Team's passenger business on a 50-50 basis for fiscal years 2007, 2008, and 2009 (the "2005 Agreement").  (*Id*. ¶ 10).  The following year, the parties memorialized the agreement in a document known as the FedEx Letter Agreement.  (*Id*.).

In reliance on the FedEx Letter Agreement, ATA paid Northwest Airlines $25 million for seven McDonnell Douglas DC-10-30 aircraft and two McDonnell Douglas DC-10-30 airframes.  (*Id*. ¶ 11).  In addition, ATA incurred expenses in excess of $20 million for training pilots and associated personnel and other expenses related to the purchase.  (*Id*.).

ATA and FedEx also executed two additional agreements related to the FedEx Team Arrangement.  The first was entitled "Contractor Team Arrangement Agreement" (the "2008 Team Arrangement Agreement").  (*Id*. ¶ 25).  That agreement authorized FedEx to bind ATA and Omni to military contracts with the United States Transportation Command, a component of the Defense Department, for CRAF participation.  (*Id*.).  The second, drafted by FedEx, was entitled "Contractor Team Arrangement Fee Agreement" (the "2008 Fee Agreement").  That agreement provided that FedEx would receive all revenue derived from the parties' participation in the CRAF program, and that FedEx

2

would then pay ATA its allotted share.  (*Id*. ¶ 28).

In January 2008, FedEx abruptly and unexpectedly notified ATA that FedEx would no longer permit ATA to be a member of the FedEx Team for flying military charters for government fiscal year 2009.  (*Id*. ¶ 14).  FedEx instead intended to use Northwest Airlines to fulfill ATA's duties for government fiscal year 2009.  (*Id*. ¶ 15). The disruption of the military charter business caused ATA to file for bankruptcy protection in April 2008.  (*Id*. ¶ 18).

On June 11, 2008, ATA filed the present lawsuit against FedEx, alleging: (1) breach of contract (Count A); breach of fiduciary duty (Count B); breach of duty of good faith and fair dealing (Count C); equitable estoppel (Count D); promissory estoppel (Count E); and constructive fraud/fraudulent concealment (Count F).  ATA also seeks extracontractual punitive damages (Counts B and F) and attorney's fees (Count G). FedEx moves for partial judgment on the pleadings as to Counts B-G on grounds that those claims are preempted by the Airline Deregulation Act of 1978 (the "ADA").

## II.    Standard for Dismissal

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial . . . ." FED. R. CIV. P. 12(c).  A court should only grant a motion for judgment on the pleadings "if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief."  *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).  The court employs the same standard to review a Rule 12(c) motion as it uses to

review a motion to dismiss under Rule 12(b)(6), taking the facts alleged as true and

drawing reasonable inferences in favor of the non-moving party. *Pisciotta v. Old Nat'l*

*Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *United States v. Rathbone Ret. Cmty., Inc.*,

2009 WL 2147878, at *1 (S.D. Ind. July 15, 2009). When the moving party establishes

that no material issues of fact need resolution and that it is entitled to judgment as a

matter of law, the court should grant its motion for judgment on the pleadings. *Nat'l*

*Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

## III.    Discussion

Congress deregulated the airline industry with passage of the ADA. To prevent

states from "undo[ing] federal deregulation with regulation of their own," Congress

included a preemption clause in the ADA. *Morales v. Trans World Airlines, Inc.*, 504

U.S. 374, 378 (1992). As re-codified in 1994, the ADA preemption clause states as

follows:

> Except as provided in this subsection, a State, political subdivision of a
> State, or political authority of at least 2 States may not enact or enforce a
> law, regulation, or other provision having the force and effect of law
> relating to a price, route, or service of an air carrier that may provide air
> transportation under this subpart.

49 U.S.C. § 41713(b)(1). In *Morales*, the Supreme Court interpreted the phrase "relating

to" expansively: "The ordinary meaning of these words is a broad one – 'to stand in

relation; to have bearing or concern; to pertain; refer; to bring in association with or

connection with,' . . . and the words thus express a broad preemptive purpose." *Morales*,

504 U.S. at 383. Thus, the Court concluded that "State enforcement actions having a

4

connection with or reference to airline 'rates, routes or services' are preempted . . . ." *Id.* at 384.

In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Supreme Court discussed what constitutes "enact[ment] or enforce[ment]" of a state "law, regulation or other provision" necessary to trigger preemption in the first instance. *Id.* at 226. The Court held that the broad preemptive effect identified in *Morales* barred all state law causes of action against airlines except for "routine breach-of-contract claims." *Id.* at 232. Further, the *Wolens* Court determined that, under the ADA preemption clause, courts are only allowed – in routine breach-of-contract cases – to enforce "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement[s]":

> The ADA's preemption clause . . . stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232-33.

## A.     The State Law Claims Relate to the Routes and Services of Air Carriers

ATA contends that its non-contractual claims do not "relate to" the services of an air carrier because ATA provided its services to the CRAF program (as opposed to FedEx), and pursuant to that program, it provided airline services to members of the

5

armed forces and their dependents.  (Response Brief at 10).  ATA misapprehends the

scope of the ADA preemption clause.

In *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000), the

Seventh Circuit considered whether the ADA preempted non-contractual state law claims

in a dispute between two air carriers.  In that case, Mesa Airlines and its subsidiary

provided regional flight operations for United and objected when United chose another

regional airline to operate eight routes.  *Id*. at 606-07.  Relations between the airlines

worsened and eventually United terminated the agreement.  *Id*. at 607.  As in this case,

the regional airline "provide[d] labor," not to the major carrier (United), but to the

passengers.  Nevertheless, "[t]he district court concluded that all three tort claims relate to

an air carrier's routes – they concern which carriers fly to which destinations from which

airports, and which carriers provide service (and at what rates) on through or joint routes

– and therefore are preempted."  *Id*. at 607-08 (citing *Travel All Over the World, Inc. v.

Saudi Arabia*, 73 F.3d 1423, 1430-35 (7th Cir. 1996)).  The Seventh Circuit affirmed this

conclusion.  As in *Mesa Airlines*, the non-contract claims at issue here also "concern

which carriers fly to which destinations from which airports, and which carriers provide

service (and at what rates) on through or joint routes."  Indeed, the thrust of ATA's

Complaint are the allegations that FedEx improperly terminated ATA as a charter

services provider to the United States military via the FedEx team.  ATA's claims are

grounded expressly on FedEx's services, specifically "charter services," "passenger

business," or "charter business" for the United States military.  (Complaint ¶¶ 2, 10, 11,

6

14, 15, 17; *see also Travel All Over the World*, 73 F.3d at 1434 ("[Plaintiff's] claims expressly refer to airline 'services,' which include ticketing as well as the transportation itself . . . .  Such tort claims clearly 'relate to' the airline's provision of services."). Accordingly, the court finds that the claims at issue here have some "connection with" an airline service.  *See Morales*, 504 U.S. at 383.

ATA's Complaint not only implicates airline services, it also implicates airline routes.  In fact, the gravamen of ATA's Complaint is the allegation that FedEx did not allow it to fly particular *routes* as part of the FedEx Team.  *See Mesa Airlines*, 219 F.3d at 609 (holding extracontractual claims preempted where Plaintiff's allegations arose from United Airlines' choice to replace plaintiff with another regional carrier to operate certain routes).

Moreover, each of the agreements referenced by ATA has a connection with a route or service.  In paragraph 4 of the 2008 Team Arrangement Agreement, the parties, including ATA and FedEx, agreed to make aircraft available "for the operation of charter passenger, cargo, and scheduled cargo *services*."  (Defendant's Ex. A, 2008 Team Arrangement Agreement ¶ 4) (emphasis added).  In paragraph 1 of the 2008 Fee Agreement, ATA agrees to pay FedEx a portion of the revenue "ATA is entitled to receive for transportation *services* provided by ATA."  (Defendant's Ex. B, 2008 Fee Agreement ¶ 1) (emphasis added).  That agreement also specifies that ATA will be entitled to an allocation of the routes awarded to the FedEx Team by the United States military for the 2008 fiscal year.  (*Id.* ¶ 5.A(iv)).  The 2005 Agreement and the FedEx

Letter Agreement, according to ATA's own description, also deal with the division of routes among service providers.  (Response Brief at 7).  Accordingly, the court finds that the relationship between ATA and FedEX was intimately connected with routes and services under the *Morales* analysis.

### B.      The Non-Contract Claims Seek to Enforce State Law Against FedEx

Pursuant to the Supreme Court's decision in *Wolens*, the full range of state-law claims against air carriers – all statutory and common law claims other than breach-of-contract claims seeking solely to enforce the obligations that air carriers placed on themselves – are preempted when they relate to air carrier prices, routes, or services.  *See Mesa Airlines*, 219 F.3d at 607 ("State common law counts as an 'other provision having the force and effect of law' for purposes of this statute."); *Travel All Over the World*, 73 F.3d at 1435 ("The plaintiffs also argue that *Wolens* has liberated all common law claims from the ADA's preemptive scope, but *Wolens*, did not distinguish between common law and statutory claims.  Rather, it distinguished between states enforcing private contracts and imposing their own substantive standards external to those contracts.").  With that principal in mind, the court now turns to ATA's specific claims.

ATA's claims for breach of fiduciary duty (Count B) and breach of the duty of good faith and fair dealing (Count C) are preempted because the claims impose duties that are implied under state law and beyond the scope of the parties' agreements.  *See Mesa Airlines*, 219 F.3d at 610 (finding the ADA "defeats external rules" of fiduciary obligations); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 541-42 (7th Cir. 1993) (holding

state law claim for breach of fiduciary duty was preempted where plaintiff based claims

on allegations that the airline collected and withheld taxes for tickets that were then

cancelled); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 32, 36 (1st Cir. 2007) (holding ticket

purchasers' claims, including breach of fiduciary duty and breach of the covenant of good

faith and fair dealing, were preempted where claims were based on airlines' refusal to

refund fees and taxes paid in the purchase of non-refundable tickets that were

subsequently not used); *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2009 WL 723149, at

*2, 5 (S.D. Ohio March 16, 2009) (dismissing plaintiff's non-contract claims including

breach of good faith and fair dealing for allegations of improper shipping charges as

preempted by the FAAAA[1] because they "would constitute an enlargement or

enhancement of the parties' bargain"); *McMullen v. Delta Air Lines, Inc.*, 2008 WL

4449587, at *5 (N.D. Cal. Sept. 30, 2008) (holding plaintiff's claim that Delta breached

an implied covenant of good faith and fair dealing by collecting a Mexican non-

immigrant tax for each passenger was preempted by the ADA); *Ray v. Am. Airlines, Inc.*,

2008 WL 3992644, at *10 (W.D. Ark. Aug. 22, 2008) (holding passenger's claims of

breach of implied covenant of good faith and fair dealing for allegations stemming from a

---

[1] In 1994, Congress enacted the Federal Aviation Administration Authorization Act of
1994 ("FAAAA"), which included preemption provisions for motor carriers virtually identical to
the preemption provisions of the ADA.  The Supreme Court found that since Congress used the
language from the ADA preemption provision in the FAAAA preemption provision after the
Court had interpreted the ADA preemption provision in *Morales*, Congress intended to
incorporate the *Morales* interpretation into the FAAAA preemption provision.  *Rowe v. New
Hampshire Motor Transp. Ass'n*,  552 U.S. at 364, 370 (2008).  Accordingly, the cases
addressing FAAAA preemption also apply preemption under the ADA.

delayed trip were preempted to the extent they claimed relief beyond any specific terms in the airline's conditions of carriage contract).  Similarly, ATA's claims for equitable estoppel (Count D), promissory estoppel (Count E), constructive fraud/fraudulent concealment (Count F), and attorney's fees (Count G) are preempted because they seek relief outside the scope of the parties' agreements.  *See A.J.'s Wrecker Serv. of Dallas, Inc. v. Salazar* 165 S.W.3d 444, 449 (Tex. Ct. App. 2005) (finding state law claims including equitable estoppel and promissory estoppel preempted by federal law where plaintiff sued towing company for wrongfully towing her car); *see also Cerdant*, 2009 WL 723149, at *4, 5 (dismissing plaintiff's non-contract claims, including promissory estoppel, for allegations of improper shipping charges as preempted by the FAAAA because they "would constitute an enlargement or enhancement of the parties' bargain."); *Osband v. United Airlines, Inc.*, 981 P.2d 616, 623 (Colo. Ct. App. 1998) (finding employees' promissory estoppel claim to reinstate prior travel benefits preempted); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F.Supp. 665, 672-73 (N.D. Ga. 1997) (finding ADA preempts equitable relief); *In re Korean Air Lines Co., Ltd. Antitrust Lit.*, 567 F.Supp.2d 1213, 1221 (C.D. Cal. 2008) (finding state law claims including fraudulent concealment preempted in case alleging violations of antitrust and consumer protection laws as a result of an alleged price-fixing conspiracy); *Wagman v. Fed. Exp. Corp.*, 1995 WL 81686, at *2 (7th Cir. Feb. 17, 1995) (affirming dismissal on preemption grounds of constructive fraud and other claims based on allegations of misleading advertising arising from the late delivery of plaintiff's package); *see also*

10

*Mesa Airlines*, 219 F.3d at 610 (noting air carriers are not free to engage in "unscrupulous" or fraudulent practices because the Secretary of Transportation has responsibility to investigate claims of deceit and to issue remedial orders); *Statland*, 998 F.2d 539, 541-42 (7th Cir. 1993) (finding statutory fraud claims preempted where passenger sued regarding non-refunded taxes and fees on a canceled ticket).  ATA's request for an award of punitive damages in Counts B and F are likewise preempted, as punitive damages awards are instruments of state public policy.  *See Travel All Over the World*, 73 F.3d at 1432 n.8 (holding punitive damages preempted because "[r]ather than merely holding parties to the terms of a bargain, punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement.'" (quoting *Wolens*, 513 U.S. at 233)); *see also, e.g., Galieo Int'l, L.L.C. v. Ryanair, Ltd.*, 2002 WL 314500, at *6 (N.D. Ill. Feb. 27, 2002) (holding claim for punitive damages to deter allegedly deceptive and misleading conduct related to a consumer reservation system agreement and other claims preempted); *Deerskin Trading Post*, 972 F.Supp. at 673 ("[T]he Supreme Court did state explicitly that the parties should be held to their bargain, with no enlargement or enhancement based on state policy.  An award of punitive damages would constitute such an enhancement.").

Based upon the foregoing, the court finds that ATA's non-contractual claims relate to an airline route or service, and are therefore preempted by the ADA.  FedEx's Motion for Partial Judgment on the Pleadings must therefore be **GRANTED**.

## IV.     Conclusion

Because ATA's extracontractual state law claims are preempted by the ADA, the

court hereby **GRANTS** FedEx's Motion for Partial Judgment on the Pleadings (Docket #

76).


**SO ORDERED** this  21st   day of April 2010.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Peter D. Blumberg
FEDERAL EXPRESS CORPORATION
peter.blumberg@fedex.com

Kenneth E. Broughton
HAYNES AND BOONE, LLP
kenneth.broughton@haynesboone.com

Michael E. Gabel
FEDEX LEGAL DEPARTMENT
megabel@fedex.com

M. Kimberly  Hodges
FEDEX LEGAL DEPARTMENT
kim.hodges@fedex.com

John David Hoover
HOOVER HULL LLP
jdhoover@hooverhull.com

Don R. Hostetler
HOOVER HULL LLP
dhostetler@hooverhull.com

Thomas E. Kurth
HAYNES AND BOONE, LLP
thomas.kurth@haynesboone.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com

George E. Purdy
BOSE MCKINNEY & EVANS, LLP
gpurdy@boselaw.com

Robert R. Ross
FEDERAL EXPRESS CORPORATION
rrross@fedex.com

W. Alan Wright
HAYNES AND BOONE, LLP
alan.wright@haynesboone.com

Carina M. de la Torre
BOSE MCKINNEY & EVANS, LLP
cdelatorre@boselaw.com